[Sac. No. 89.    Department Two.—September 8, 1896.]

F. G. WARD, SHERIFF, RESPONDENT, v. MATT. HEALY, APPELLANT.   M. ASHER, INTERVENOR AND RESPONDENT.

EXECUTION—INSOLVENCY—PRIORITY OF RIGHT TO PROCEEDS.—The lien of an execution creditor upon personal property in the hands of the sheriff, and the right to a sale thereof in satisfaction of his judgment, is not affected by the subsequent adjudication of the judgment debtor as an insolvent, and the appointment of the sheriff as receiver of his estate

ID.—INTERVENTION BY ASSIGNEE.—In an action by a sheriff, claiming as a receiver of an insolvent debtor, to recover from a purchaser the price of personal property sold, in which the purchaser sets up a prior right to the proceeds of the sale as an execution creditor of the insolvent, the assignee of the insolvent may intervene, but in his complaint in intervention must allege the fact of the assignment to him, and establish it by evidence.

ID.—ACCOUNTING BY RECEIVER.—Upon a recovery by the plaintiff in such an action he would recover as receiver, and the assignee in insolvency would be entitled to have him account for the proceeds in the insolvency proceeding, without resorting to a separate action in equity.

APPEAL from a judgment of the Superior Court of Lassen County and from an order denying a new trial. W. T. MASTEN, Judge.

The facts are stated in the opinion of the court.

*Spencer & Raker*, and *F. C. Spencer*, for Appellant.

*Shinn & Shinn*, for Respondent Ward.

*Goodwin & Goodwin*, for Respondent Asher.

HENSHAW, J.—These appeals are from the judgment
and from the order denying defendant a new trial.

Plaintiff for cause of action set forth that upon May
25, 1893, one James M. Smith was, by the superior court,
adjudged to be an insolvent debtor, and, on said day,
plaintiff, sheriff of the county, was appointed receiver of
his property.   Upon the eighth day of June, 1893, plain-
tiff "gave the bond required by said order and entered
upon the discharge of his duties as receiver, and acting
as such receiver took possession of sixty head of horses
belonging to the insolvent."   Thereafter he gave due
and legal notice that upon June 24, 1893, he would as
receiver sell said horses at public auction.   Defendant
claimed some interest in or lien upon the horses, and
sought an order from the court prohibiting the sale.
Thereupon such proceedings were had in the matter
that the following stipulation was entered into between
defendant and the receiver, and spread upon the min-
utes of the court: "Counsel now agree that the sheriff
now proceed to sell the property now in his keeping, and
advertised to be sold this day, belonging to the said in-
solvent, the proceeds of said sale to be held by him sub-
ject to the decision of this court as to its disposal."   In
pursuance of this stipulation plaintiff proceeded to sell,
and did sell, the horses at public auction to defendant
for the sum of six hundred and fifty-eight dollars and
fifty cents, and delivered them to defendant upon the
day of the sale.   Plaintiff has demanded payment of
said sum, which defendant refuses to pay.

Defendant for answer denied that plaintiff was the
receiver in insolvency, denied that plaintiff sold the
horses as receiver, but admitted and averred that he sold
them as sheriff.   He admitted also his purchase of the
horses at the sale, and likewise admitted that he had
failed to pay the purchase price.   But in this regard he
alleged that, before the appointment of plaintiff as re-
ceiver, he was a judgment creditor of said James M.
Smith, and had caused to be issued and placed in plain-
tiff's hands as sheriff for levy a writ of execution.

Plaintiff, as sheriff, levied upon, took into, and retained in possession the said horses under and by virtue of the writ of execution before the insolvency proceedings of said Smith were commenced. This possession continued until after the sale. It was the lawful duty of plaintiff as sheriff to sell the horses under the writ for the benefit of defendant, and it was defendant's right to become a purchaser at the sale, and have the proceeds of the sale applied as a payment upon his judgment.

M. Asher intervened as assignee in insolvency, asking that defendant be compelled to pay the purchase price to plaintiff, and that plaintiff be directed to account to him for the same.

There were thus presented three different claims. The plaintiff, who sued as sheriff, contends that he did not sell as receiver nor under execution, but under the stipulation, and is therefore entitled to recover the money and hold it until directed by the court to turn it over either to the assignee or to the judgment creditor. The intervenor demands the money as part of the insolvent's property, while the defendant insists that the purchase price should be applied in reduction of his judgment.

As to plaintiff's contention that he did not sell either as receiver or under the execution, but under the stipulation, it need but be said that unless he sold either as receiver or as sheriff under execution levy he had no legal right to sell Smith's property at all. He could not sell in both capacities; he had no authority to sell except in one or the other. Smith was not a party to the agreement, and the only legal effect of the stipulation was that the rival claimants agreed to permit the sale, leaving for future determination the question whether the sale should be legally regarded as made in the insolvency proceedings or under the execution.

By this action a decision upon that question is sought.

It is undisputed that if the execution levy was made before the insolvency proceedings were commenced, and the levy was not released at the time of or before the

sale, the judgment creditor's rights are prior and su-
perior to those of the receiver; and the sale should be
treated as made under the execution.

' The court found that the sheriff did not levy upon
the horses under the execution, and did not take the
horses into his possession until after the adjudication of
insolvency. These findings are attacked, and we think
successfully. It is uncontradicted that the writ of ex-
ecution was placed in the sheriff's hands and receipted
for by him upon May 15, 1893. The order of adjudica-
tion of insolvency was made May 25, 1893. The evi-
dence upon the subject is that of Frank Strong, a deputy
sheriff. He is asked:

" Q. Did you make a levy on the property under that
execution? A. Not that day; I had previous to that,
sometime about the 15th of May.

" Q. You brought the execution to us last night and
showed us you had found it, and you found it in the
sheriff's office. A. Yes, sir; but I don't recollect ever
seeing that execution after I went out to levy on the ex-
ecution; I left the writ at home and only took copies
with me."

He further testified that on or about the fifteenth day
of June he went out to Madeline plains and took the
horses from the charge of the sheriff's keeper into his
own immediate custody; that he attended to all matters
connected with the taking and sale of the horses; that
the sheriff personally had nothing to do with them, and
that the sole official position which he held was that of
deputy sheriff.

It is also in evidence, without conflict, that defendant's
attorneys instructed the sheriff not to release his levy
under the writ, and to sell the property levied upon.

The only answer which respondent's counsel make to
this evidence of a levy upon May 15th is that appellant's
counsel know that it " had reference to a levy upon real
estate, and had no relation to any matter in question in
this suit." To which appellant's counsel retort that
"they know the witness meant what he said, and that

his statement did not have reference to a levy on real estate."

With this wide divergence of knowledge upon their part we are left to draw our own information from the record itself. In that no intimation appears of any levy upon real estate, or that the evidence is not addressed to the taking of the horses; and it may also be suggested that, if the evidence had no relation to any matter in question, it was the plain duty of respondent's counsel to see that it was eliminated from the bill of exceptions.

If then, as appears from the foregoing, the property was in the sheriff's custody under execution levy at the time of the adjudication of insolvency and the appointment of the receiver, defendant's lien thereon, and his right to compel a sale thereof in satisfaction of his judgment, was in no way affected by those proceedings. (*Vermont etc. Co.* v. *Superior Court,* 99 Cal. 579.)

From what has been said it necessarily results that a new trial must be ordered, in view of which it becomes pertinent to consider some of the other contentions of appellant.

The complaint in intervention nowhere averred that an assignment had been made to Asher, the intervenor. Upon the trial no evidence was offered to show any assignment to him. It is the assignment which vests title in the assignee. The averment of such assignment was necessary in pleading and essential in proof. Otherwise the assignee has no standing in the case, and neither pleads nor establishes in himself a cause of action. Defendant's demurrer to the complaint in intervention should have been sustained, and his motion for a nonsuit against the intervenor for failure to prove the assignment should have been granted. (Insolvency Act of 1880, secs. 17, 18; *King* v. *Felton,* 63 Cal. 67.)

So far as the complaint in intervention joins with the plaintiff in seeking a recovery against the defendant, it is within the rules permitting an intervention; but its demand that the plaintiff as receiver be compelled to

account with the intervenor as assignee is at least super-
fluous. If plaintiff recovers the moneys at all he recovers
them as receiver. As receiver he is an officer of the
court in insolvency. The assignee, without resorting to
a separate action, may call him to account before the
court in insolvency, and there have his accounts adjusted
and settled without resort to a separate action in equity.

The judgment and order are reversed, with directions
to the trial court to sustain defendant's demurrer to the
complaint in intervention, with leave to the intervenor
to amend.

McFARLAND, J., and TEMPLE, J., concurred.